**James P. CREWS, Plaintiff-Appellant,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant-Appellee.**

No. 85–1317.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1986.

Decided April 14, 1986.

Otis M. Underwood, Jr. (argued), Oxford, Mich., for plaintiff-appellant.

Marci B. McIver, Charles J. Taunt (argued), Russell N. Luplow, Russell N. Luplow, P.C., Bloomfield Hills, Mich., for defendant-appellee.

Before ENGEL, CONTIE and MILBURN, Circuit Judges.

CONTIE, Circuit Judge.

James P. Crews appeals from an order of the district court dismissing, pursuant to Fed.R.Civ.P. 41(b), his complaint seeking a refund of contributions made on his behalf to defendant Central States, Southeast and Southwest Areas Pension Fund pursuant to ERISA, 29 U.S.C. § 1001 *et seq.*, and state law. Finding that, in light of the parties' contractual limitations on recovery of mistakenly paid contributions, the Fund trustees did not act in an arbitrary and capricious manner in denying a refund, we affirm.

### I.

On December 17, 1983, James P. Crews filed a complaint against defendant Central States asserting jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 29 U.S.C. §§ 1132(e)(1), 1451(a)(1). Crews alleged that between January 1945 and August 31, 1979, he was an employee of Jim's Lumber as "an operation manager in the company's bargaining unit," and owned 50 percent of the company. Crews alleged that the President of the Teamsters, James Hoffa, informed him that the Teamsters would represent his employees and that Crews himself would be required to join the union. Crews alleged that from January 1950 to June 24, 1978, Crews paid union dues and contributed to health and pension funds, including defendant, Central States. Crews alleged that the union knew of his ownership interest in Jim's Lumber and "subsequently assured him he would be paid a pension upon retiring."

In early 1978, Crews applied for retirement, and, on May 22, 1978, was informed that his application was rejected "because his conditions of employment with Jim's Lumber were not recognized as proper under their Collective Bargaining Agreement." Crews also alleged that he was informed "that his claim would be forwarded to the Refund Department of said Trust Fund so that all contributions made in his behalf might be returned." On December 8, 1978, Crews was notified that his re-

quest for a refund had been denied due to restrictions in ERISA and the Internal Revenue Code. On March 19, 1980, the Fund specifically notified Crews that 29 U.S.C. § 1103(c)(2)(A) barred refund. Crews alleged that the 1980 amendments to the statute "retroactively allow[ed] the kind of refund requested by Plaintiff," and that he was damaged in the amount of $66,000 by the Fund's refusal to refund the contributions.

On March 30, 1984, Central States answered denying the allegations of the complaint and asserting failure to state a claim, lack of subject-matter jurisdiction, lack of standing, laches, waiver, and estoppel. On November 30, 1984, Central States moved to strike plaintiff's demand for a jury trial on the grounds that no statutory basis for a jury trial existed, and that the case "falls within the Court's judicial equity jurisdiction over matters of trust administration and is not a proper subject for jury trial." In response to the motion to strike the jury demand, Crews argued that his claim from 1955 to 1975 was a state law contract action, and that the United States Constitution and Michigan Constitution granted him the right to a jury trial.

On December 12, 1984, the case was referred to a magistrate pursuant to 28 U.S.C. § 636(b)(1)(A), and Central States moved to dismiss the complaint on the grounds that Crews as an individual could not seek a refund on behalf of his employer, that federal law precluded a refund of contributions made due to a mistake of law, that the terms of the trust agreement prohibited the refund, and that Central States' refusal to refund the contributions was not arbitrary and capricious. The motion was also styled as one seeking summary judgment. Central States attached the affidavit of George Psaras, director of the Central States Contributions Receivable Division and Chairman of the Refund Committee. Psaras indicated that Crews' pension application was received on October 6, 1976, and that it was later determined that he was not a covered employee pursuant to the collective bargaining agreement between Jim's Lumber and the Teamsters.

On May 22, 1978, Crews was notified of his ineligibility and that his application was being treated as a request for a refund by Jim's Lumber. On October 26, 1978, the Refund Committee determined that the contributions had been made due to a mistake of law and that the refund should be denied. On November 21, 1978, the Fund's Board of Trustees approved this result. Psaras also indicated that the trustees uniformly refused to refund contributions made as a result of a mistake of law.

The Trust Agreement, effective December 31, 1974, defined an employer as one who is bound by a collective bargaining agreement with a union or one "who satisfied the requirements for participation as established by the trustees and agrees to be bound by this Agreement." Art. I § 1. The agreement defined an employee as:

A person who is employed under the terms and conditions of a collective bargaining agreement entered into between an Employer as herein defined and a Union as herein defined, and on whose behalf payments are required by such collective bargaining agreement or applicable law to be made to the Fund by the Employer.

Art. I, § 3(a). Article IV, § 17 provided that "[t]he Trustees ... shall have the power to construe the provisions of this Agreement and the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers." Article XIV, § 1 provided:

In no event shall the Employers, directly or indirectly, receive any refund on contributions made by them to the Trust, except in case of bona fide mistake, and as to which contributions are returned within one year after payment of the contributions, nor directly or indirectly participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund. Upon transfer of each contribution to the Trustees, all responsibilities of the Employers for such contributions shall cease, and the Employers

shall have no responsibilities for the acts of the Trustees. No employee shall have any individual right, title, interest, or claim against any Employer, Employer's contribution, or the Trust Fund, except as may be expressly provided for in this Agreement or under federal law.

Crews, in his answer to the motion to dismiss, admitted that he was "convinced that the law will not support a claim for a pension," that he had standing as a "beneficiary" to maintain the action, that his action for a refund from 1955 to 1975 was based on the common law, and that the payments were made pursuant to a mistake of fact, not law. Crews contended that he never saw a copy of the Trust Agreement until this litigation. Correspondence between Crews and Central States indicated a retirement date of December 31, 1976. On January 26, 1977, the Fund sought clarification of this date in light of correspondence from the company indicating that Crews was still employed. On February 7, 1977, Crews responded that he would retire on June 1, 1977. On May 16, 1977, Crews informed Central States that he would retire on December 23, 1977.

The exhibits submitted by the parties to the district court indicate that Central States sent Crews two checks, dated February 1 and March 1, 1978. On March 2, 1978, Allen L. Cole, Crews' accountant, wrote to Central States returning the two checks.

> The reason for the above is due to the fact that Mr. Crews had his business up for sale and the sale was not consummated. In order to keep the business for sale, he must continue to operate. Consequently, we will have to change the retirement until such time as he disposes of the business.

As a result of this letter, Central States, on April 24, 1978, made inquiries to Teamsters Local Union No. 458 regarding Crews' status as a covered employee with copies to Crews. On May 5, 1978, Cole responded that Crews owned 50 percent of the business, collected a salary, had two employees who were paid in accord with the collective bargaining agreement, and Crews had the right to hire and fire employees. Further, "[y]our union insisted that Mr. James P. Crews pay into the funds and all the other requirements as per the other members of his staff." On May 8, 1978, Cole returned another check to the Fund. On May 22, 1978, Central States informed Crews that:

> [Y]ou were never properly employed under the terms and conditions of the Collective Bargaining Agreement. We have no alternative than to place your application in the Fund's rejection file.
>
> Due to the above facts, we are forwarding your claim to our Refund Department, so that all contributions made in your behalf during your employment at Jim's Lumber may be returned to that firm.

On December 8, 1978, the refund was denied "based upon the applicable provisions of the Internal Revenue Code and the Employee Retirement Income Security Act of 1974. These provisions are very restrictive in terms of those conditions under which refunds are permissible." On December 14, 1978, Crews telephoned Central States that he did not request a refund and wished to collect his pension. On October 3, 1979, Cole wrote to Central States that Crews retired August 31, 1979.

On February 28, 1980, Crews again sought a refund. On March 19, 1980, George Psaras replied to Cole that the refund had been denied in accord with decisions of the Refund Committee of October 26, 1978, and the Board of Trustees of November 21, 1978. Psaras cited 29 U.S.C. § 1103(c)(2)(A), and wrote:

> In the instant case, the company made payments to the Fund in mistaken belief that it was under a legal obligation to do so. This mistake was one of law, not fact. Stated otherwise, Jim's Lumber Company was mistaken as to the legal status of its employees and their entitlement to benefits.

On February 14, 1985, the district court found that the application was not time-barred since the last contribution was made in 1978, and that the application was timely

pursuant to Article XIV, § 1 of the Trust Agreement. The district court also found that the trustees correctly determined that a mistake of law was implicated, and that plaintiff might prevail if the 1980 amendments to ERISA were applied retroactively. The court denied the motion for summary judgment on the ground that an issue of fact remained with regard to whether the determination of the trustees was arbitrary and capricious.

Trial was held on March 5, 1985 and the district court granted the motion to strike the jury demand based on *Wardle v. Central States*, 627 F.2d 820 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). It was stipulated that the amount of contributions in contest, absent interest, was $10,027.50. Central States moved to dismiss the complaint on the ground that the complaint failed to allege arbitrary and capricious action by the Fund. The court reserved ruling on the motion.

James Crews, age 72, testified that he started selling lumber in the 1930s, and retired in 1979. Crews joined the Teamsters as a result of contacts by Jimmy Hoffa and joined the pension plan due to pressure. Crews indicated that his wife, Mary, made all payments. The business had two union employees. Crews testified that he signed a contract with the Teamsters.

Mary Crews testified that her husband joined the Teamsters in the mid-1940s in response to union men who said he would have to join if he worked in the yard. Union personnel also informed Crews that he would have to contribute to the Fund. Payments to the Fund began in 1956.

Central States moved for dismissal, and the motion was granted. The court noted that arbitrary and capricious conduct was not pleaded and, even if it was, was not

proven. The court, accordingly, dismissed the case pursuant to Fed.R.Civ.P. 41(b).

## II.

The contract in this case, the Trust Agreement, Article XIV § 1, provided:

> In no event shall the Employers ... receive any refund on contributions made by them to the Trust, except in case of bona fide mistake, and as to which contributions are returned within one year after payment of the contributions....

This provision limits the recovery of contributions with regard to both the time refund is sought ("one year after payment") and the basis for such refund (bona fide mistake). Article IV, § 17 provided that "any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers."[1]

We have construed our review of trustees' decisions to be limited to whether such decisions are arbitrary or capricious, not supported by the evidence, or erroneous on a question of law. *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage*, 749 F.2d 315, 321 (6th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985). "A federal court is to focus on the evidence before the trustees at the time of their final decision and is not to hold a *de novo* factual hearing." *Wardle v. Central States*, 627 F.2d 820, 824 (7th Cir.1980). *See Rueda v. Seafarers International Union*, 576 F.2d 939, 942 (1st Cir.1978).

First, we note that the one-year contractual limitation on recovery of contributions plainly limits Crews' recovery to post-ERISA contributions. This is true even if we were to construe the evidence most favorably toward Crews and measure that period from the date of receipt of his pension application on October 7, 1976. Under this construction, Crews' entitlement to re-

---

1. The case law is clear that "the trust instrument is to be followed unless it is inconsistent with the fiduciary requirements set out in ERISA." *Blackmar v. Lichtenstein*, 603 F.2d 1306, 1309 (8th Cir.1979); *Electricians Health, Welfare and Pension Plans, IBEW, Local No. 995 v. Gulino*, 594 F.Supp. 1265, 1272 (M.D.La.1984). The evidence demonstrates that Crews was aware of the collective bargaining agreement, and that such created obligations on the employer with respect to the Fund.

covery would commence on October 6, 1975, a date subsequent to the January 1, 1975 effective date of ERISA. Accordingly, there is no merit to Crews' claims that state law claims remain in this action, such having been barred by the contract of the parties.

■ Second, the contract allowed recovery only for bona fide mistakes. George Psaras, director of the Central States Contributions Receivable Division and Chairman of the Refund Committee, indicated that the trustees uniformly refused to refund contributions made as a result of a mistake of law. This is consistent with ERISA, 29 U.S.C. § 1103(c)(2)(A), which provided:

> In the case of a contribution which is made by an employer by a *mistake of fact,* paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution.

(Emphasis added). Paragraph (1) provided in pertinent part that "the assets of a plan shall never inure to the benefit of any employer." Accordingly, consistent with federal law in effect at the time the trustees considered Crews' claim, the Fund could only return contributions made by mistake of fact.[2]

■ The mistake at issue in this case concerns whether Crews was an employee covered by the collective bargaining agreement on whose behalf contributions were required to be made. Crews simply misconstrued the terms of the agreement. Such errors are clearly deemed errors of law. *Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 753 F.2d 744, 750–52 (9th Cir.1985); *Peckham v. Board of Trustees,* 719 F.2d 1063, 1065, *modified,* 724 F.2d 100 (10th Cir.1983); *Martin v. Hamil,* 608 F.2d 725, 729 (7th Cir.1979); *Service Employees International Union Local 82 Labor Management Trust Fund v. Baucom Janitorial Service, Inc.,* 504 F.Supp. 197, 198 (D.D.C.1980); *Central States v. Wholesale Produce Supply Co.,* 478 F.Supp. 884, 887 (D.Minn.), *aff'd,* 611 F.2d 694 (8th Cir.1979). *See Kohn Beverage,* 749 F.2d at 317 ("The construction of collective bargaining agreements and employee benefit plans is a question of law."). *But see Teamsters Local 639-Employers Health Trust v. Cassidy Trucking Co.,* 646 F.2d 865, 867 (4th Cir.1981).

Accordingly, pursuant to our limited standard of review, we find the decision of the trustees neither arbitrary or capricious, unsupported by the evidence, nor erroneous on a question of law.[3]

---

**2.** Although the 1980 amended version of section 1103(c)(2)(A)(ii) may be applicable to Crews' claims, *see* Pub.L. No. 96–364, § 410(c), 94 Stat. 1208, 1308; *Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 753 F.2d 744, 750 (9th Cir.1985); *Peckham v. Board of Trustees,* 719 F.2d 1063, 1065 (10th Cir.1983), and that section does not prohibit refunds based on errors of law, "[w]illing and capable parties may provide in the agreement more restrictive terms," *Gulino,* 594 F.Supp. at 1272. The amended section is applicable only because of the retroactivity specifically provided by Congress, and, our interpretation of the basis for the trustees' decision regarding the terms of the Trust Agreement is more accurately guided by the federal law in effect at the time the trustees rendered such decision. Accordingly, the limitation on refunds in the 1975 version of section 1103(c)(2)(A) to mistakes of fact lends credence to the trustees' interpretation of the term "bona fide mistake" in the Trust Agreement to mean mistake of fact. The parties could not legally have contracted for the refund of contributions made by mistake of law. *Gulino,* 594 F.Supp. at 1272–73.

**3.** Our disposition of this case by reference to the contract of the parties makes it unnecessary to decide the difficult issues of jurisdiction, standing, the existence of implied rights of action, and preemption argued by the parties and usually present in actions by employers seeking a refund of mistakenly paid contributions. Accordingly, we decline to decide whether, absent the contractual and statutory limitations on employer recovery from employee benefit funds, 29 U.S.C. § 1103(c), Crews, as an employer or employee, could state either an express or implied cause of action under ERISA. Further, any federal common law cause of action asserted by Crews based on the doctrine of unjust enrichment would be likewise limited by the terms of the contract between the parties and federal law.

**338**

### III.

Crews asserts that the judgment of the district court ought to be reversed because the district court erred in striking Crews' demand for a jury trial. While one of the first courts to consider this issue found that there was a right to a jury trial in an action for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), *Stamps v. Michigan Teamsters Joint Council No. 43,* 431 F.Supp. 745 (E.D.Mich.1977), most courts have rejected this view and followed *Wardle v. Central States,* 627 F.2d 820, 829–30 (7th Cir.1980), finding no right to a jury trial under ERISA, *Turner v. CF & I Steel Corp.,* 770 F.2d 43 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Berry v. Ciba-Geigy Corp.,* 761 F.2d 1003 (4th Cir.1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1357 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *Bugher v. Feightner,* 722 F.2d 1356, 1359 (7th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984); *In re Vorpahl,* 695 F.2d 318, 321 (8th Cir.1982); *Calamia v. Spivey,* 632 F.2d 1235, 1236–37 (5th Cir.1980); *Strout v. GTE Products Corp.,* 618 F.Supp. 444, 445 (D.Me.1985); *Gilliken v. Hughes,* 609 F.Supp. 178, 181 (D.Del.1985); *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 430–31 (E.D.Mo.1985); *The Sixty-Five Security Plan v. Blue Cross and Blue Shield of Greater New York,* 583 F.Supp. 380, 389 (S.D.N.Y.1984); *Cowden v. Montgomery County Society for Cancer Control,* 591 F.Supp. 740, 746–47 (S.D.Ohio 1984). *But see Paladino v. Taxicab Industry Pension Fund,* 588 F.Supp. 37, 38 (S.D.N.Y.1984); *Pollock v. Castrovinci,* 476 F.Supp. 606, 609 (S.D.N.Y.1979), *aff'd,* 622 F.2d 575 (2d Cir.1980). These cases have limited applicability in light of the fact that Crews' action is not a traditional ERISA action within the parameters of 29 U.S.C. § 1132.

The inquiry with respect to the Seventh Amendment right to jury trial is whether the right or remedy is one traditionally enforced in an action at law or at equity. *Curtis v. Loether,* 415 U.S. 189, 194–96, 94 S.Ct. 1005, 1008–09, 39 L.Ed.2d 260 (1974); *Bugher,* 722 F.2d at 1357. Historically, an action for restitution seeks an equitable remedy for which there is no Seventh Amendment right to a jury trial. *In re Evangelist,* 760 F.2d 27, 31 (1st Cir. 1985); *Securities & Exchange Commission v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 95 (2d Cir.1978); *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 487 F.Supp. 999, 1006 (S.D.N.Y.1980). Crews' action seeking return of mistakenly paid contributions is essentially an action for restitution. Accordingly, the district court correctly held that Crews had no right to a jury trial. *Diano v. Central States,* 551 F.Supp. 861, 863 (N.D.Ohio 1982).

Accordingly, the judgment of the district court is AFFIRMED.