**Robert EDENS, Plaintiff,**

v.

**CENTRAL BENEFITS NATIONAL LIFE INSURANCE COMPANY, Defendant.**

No. 94–2319–M1/A.

United States District Court,
W.D. Tennessee,
Western Division.

July 18, 1995.

Richard D. Carter, Jacqueline E. Bennett, Hudgins Carter & Coleman, Alexandria, VA, R. Layne Holley, Bourland, Heflin, Alverez, Holley & Minor, Memphis, TN, for plaintiff.

Louis Jay Miller, Memphis, TN, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McCALLA, District Judge.

This matter is before the Court on plaintiff's Motion for Partial Summary Judgment filed, April 11, 1995, and defendant's Motion for Summary Judgment filed, May 11, 1995. Oral argument on the motions was heard on June 15, 1995, with Mr. Richard D. Carter, Esq. and Mr. R. Layne Holley, Esq. appearing for the plaintiff and Mr. Randall S. Rabe, Esq. and Mr. Jay Miller, Esq. appearing for defendant. For the reasons stated, plaintiff's Motion for Partial Summary Judgment is DENIED and defendant's Motion for Summary Judgment is GRANTED.

This is an action for health insurance benefits against defendant Central Benefits, which insured an ERISA-governed employee benefit plan sponsored by plaintiff's employer. The plan at issue did not provide coverage for treatment that defendant considered to be "experimental or investigative."[1] In

---

1. The plan at issue in this case provides: Experimental/Investigative—Means any treatment, procedure, facility, equipment, drug, device or supply which Central Benefits does not recognize as accepted medical practice or which did not have required governmental approval when you received it. Central Benefit Health Plan at 6–3.

1992, plaintiff was diagnosed with multiple myeloma, a rare and generally incurable form of lymphocytic cancer.[2] Plaintiff's physician referred him to Bart Barlogie, M.D., an oncologist at the University of Arkansas for Medical Sciences. Dr. Barlogie was conducting a clinical trial, which investigated the efficacy of high-dose chemotherapy with autologous bone marrow transplant ("HDCT–ABMT") as a treatment for multiple myeloma. In order to receive treatment from Dr. Barlogie under the auspices of his study, plaintiff was required to sign an informed consent statement.[3]

Plaintiff sought coverage from defendant for participating in the clinical trial. Plaintiff's request was reviewed initially by Dudley Briggs, M.D., who recommended that the request be denied because the proposed treatment was a "trial."[4] An administrative appeal followed, in which defendant referred plaintiff's request for benefits to Alvin Mauer, M.D., Professor and Chief of the Division of Hematology and Medical Oncology at the University of Tennessee. On October 1, 1993, Dr. Mauer reviewed plaintiff's claim and stated his opinion that HDCT treatment for multiple myeloma was at that time "experimental and the subject of considerable investigative effort." Central Benefits then submitted the issue to a three-member peer review panel for an outside opinion on whether HDCT–ABMT was investigative. This panel, however, addressed whether the treatment was appropriate not whether the treatment was experimental or investigative.[5] Thus, defendant referred this question to the panel for a second review. The peer review panel's second report on February 22, 1994 stated:

> The procedure itself is not investigational. The application to patients with multiple myeloma in [sic] considered investigational, just as most therapies in oncology for which reimbursement is given are considered investigational.

Admin.R. at 00438. Based on the peer review reports, the opinions of Dr. Briggs and Dr. Mauer, the language in the protocol and the informed consent statement, as well as additional documents in the administrative record, defendant concluded that the treatment was experimental and investigational and denied plaintiff's appeal.

Plaintiff has filed a Motion for Partial Summary Judgment seeking three things:[6] (1) that discovery proceed on materials and opinions in the record as available to the administrator;[7] (2) that plaintiff's physician,

---

2. Plaintiff died from cancer on November 13, 1994.

3. Portions of the informed consent stated: "This experimental study evaluates the effects of a series of intensive drug regimens as initial treatment for Multiple Myeloma ..." Admin.R. 000110. Additionally, the consent form explained: "The experimental aspects of this study include the use of much more intensive chemotherapy than is usually employed for the treatment of Multiple Myeloma. Investigational drugs include the intravenous formulation of Melphalan, which has been in use for the treatment of Multiple Myeloma for about 25 years however in the tablet form." *Id.* at 000114.

4. Dr. Briggs reviewed plaintiff's request a second time and on May 19, 1993, affirmed his initial recommendation to deny benefits in this case. *See* Admin.R. at 00018.

5. The peer review report stated, in part, that "while this treatment may be rendered in the setting of an investigation, alternatives for therapy, in my opinion, did not exist." Admin.R. at 00427. In response to the peer review report, Philip Brown, Central Benefits' Executive Director of Health Care Programs Management found that the peer review panel was "recommending approval of the ABMT procedure for plaintiff." Thus, Mr. Brown tentatively recommended that the procedure be approved—subject to an actual determination by the panel that the treatment was *not* investigational.

> It should be noted that the first peer review report also stated that:
> [A]utologous or allogenic transplantation is ... still undergoing clinical trials ... (Admin.R. at 00429).
> Because high dose chemotherapy followed by marrow reconstitution with autologous stem cells has not been compared with conventional therapy in prospective randomized trials it remains an investigational therapy. (Admin.R. 00429).

6. Although plaintiff's motion under consideration is styled as a Motion for Partial Summary Judgment, part of plaintiff's motion seeks a ruling from the Court on discovery and evidentiary issues.

7. The primary thrust of this request is that plaintiff seeks to depose Alvin Mauer, M.D., of the University of Tennessee College of Medicine, who reviewed plaintiff's case at defendant's request.

Dr. Barlogie, be allowed to testify at trial regarding his opinions on HDCT–ABMT as an accepted medical practice; and (3) that due to defendant's failure to comply strictly with 29 U.S.C. § 1133 that plaintiff receive a *de novo* hearing in which he may introduce evidence not in the administrative record.

The defendant filed a response opposing plaintiff's Motion for Partial Summary Judgment and also filed a Motion for Summary Judgment in this case. Defendant's Motion for Summary Judgment asserts that there is no dispute as to any material fact and that the Administrative Record establishes that defendant's decision to deny coverage under the plan at issue was not arbitrary or capricious.

*Plaintiff's Motion for Partial Summary Judgment*

■ In support of plaintiff's contention that he be allowed to depose Dr. Mauer and that he be allowed to call Dr. Barlogie as an expert witness at trial, plaintiff primarily relies on *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir.1991). In *Miller*, the Sixth Circuit stated that when reviewing a denial of benefits under ERISA, a court may consider "only the evidence *available to the administrator* at the time the final decision was made." *Id.* at 985. (emphasis added). Plaintiff asserts that the phrase "available to the administrator" should be interpreted broadly and should encompass Dr. Mauer and Dr. Barlogie's opinions and thought processes since this information was "available" to defendant during the review process. Thus, plaintiff contends that Dr. Mauer and Dr. Barlogie's opinions and thought processes are a part of the administrative record and properly may be considered by this Court in reviewing defendant's denial of benefits under ERISA.

---

**8.** In *Miller*, the court followed *Crews v. Central States*, 788 F.2d 332, 336 (6th Cir.1986) and *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) and did not allow the admissibility of testimony that was not a part of the administrative appeals process or the record before the administrator. *Miller*, 925 F.2d 979, 986 n. 5.

**9.** This Court, however, will review Dr. Mauer and Dr. Barlogie's opinions to the extent that they were a part of the administrative record in this case, i.e., in the form of letters, reports, or journal articles.

■ Plaintiff's reliance on *Miller*, however, is misplaced because *Miller* follows the well-established rule in the Sixth Circuit that limits the evidence introduced in a hearing on a plan administrator's benefit decision to evidence that was actually presented to the administrator and included in the administrative record.[8] This limitation applies to both an "arbitrary and capricious" or a de novo standard of review. *Id.* at 986 (citing *Crews v. Central States*, 788 F.2d 332, 336 (6th Cir.1986) (applying the principle to the "arbitrary and capricious" standard of review); *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) (applying the principle to the de novo standard of review)). Thus, in keeping with Sixth Circuit precedent on the admissibility of evidence when reviewing the denial of benefits in ERISA cases, this Court will consider only the evidence actually presented to the administrator and contained in the administrative record. Because Dr. Mauer and Dr. Barlogie's thoughts and opinions in abstract form were not a part of the administrative record in this case, plaintiff's request to depose Dr. Mauer and to admit the testimony of Dr. Barlogie is hereby DENIED.[9]

■ The last issue presented by plaintiff in his Motion for Partial Summary Judgment is the proper standard of review to be applied by the Court in considering defendant's denial of ERISA benefits in this case. Plaintiff asserts that this Court should apply a *de novo* standard of review and that plaintiff should be allowed to introduce evidence not in the administrative record solely because defendant failed to comply strictly with 29 U.S.C. § 1133.[10] In support of his position, plaintiff relies on *VanderKlok v. Provident Life and Accident Ins. Co., Inc.*, 956 F.2d 610

---

**10.** 29 U.S.C. § 1133 provides:
In accordance with regulations of the Secretary, every employee benefit plan shall—
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

(6th Cir.1992) and *Wolfe v. J.C. Penney Co. Inc.,* 710 F.2d 388 (7th Cir.1983).

In *VanderKlok,* the defendant insurer sent plaintiff's initial denial notice to an incorrect address, and the notice was never forwarded to the plaintiff. Because the plaintiff in *VanderKlok* had no notice at all that his claim was denied, the plaintiff was deprived of the opportunity to present his claim during the administrative appeal.[11] Thus, the Sixth Circuit remanded the case to the district court for a *de novo* review of the record and allowed plaintiff to submit additional evidence for review.[12]

Similarly, in *Wolfe,* an inadequate denial letter in effect precluded the plaintiff from submitting additional information in support of his claim to the plan administrator after the initial denial. In remanding the case to the fiduciary to consider the additional evidence presented by plaintiff, the court explained:

> The additional evidence which Wolfe adduced at trial suggests that if Prudential had complied with section 1133, Wolfe would have supplemented the record before Prudential, sought and received a full and fair review before the Board of Governors, and obtained a decision one way or the other based upon substantial evidence.

*Wolfe,* 710 F.2d 388, 393 (7th Cir.1983).

The instant case, however, is factually distinguishable from *VanderKlok* and *Wolfe* and is not controlled by either case. Plaintiff asserts that defendant violated ERISA's claim denial requirements in the April 1, 1993, letter to plaintiff addressing precertification of coverage for HDCT with ABMT.[13] Even assuming, *arguendo,* that ERISA claim denial requirements apply to a precertification denial, defendant contends that any alleged deficiencies in the notices to plaintiff were remedied by the extensive correspondence between the parties. On December 6, 1993, the plan administrator for defendant sent plaintiff a letter denying plaintiff's claims under the plan. This letter fully complied with the provisions set forth in 29 U.S.C. § 1133. *See* Admin.R. at 000353. On December 10, 1993, plaintiff appealed the administrator's decision and submitted documentation that the proposed treatments were not considered experimental or investigative and were accepted medical practice.

■ The purpose behind 29 U.S.C. § 1133 is to ensure that claimants receive adequate notice of denial of benefits and have a full and fair opportunity to present their case to the plan administrator. In the present case, the purpose of the statute was satisfied. Plaintiff clearly received adequate notice of the denial of benefits and pursued his appeal of the administrator's decision. Since plaintiff has presented no evidence indicating that

---

Additionally, the regulations promulgated under section 1133 provide that the written notice informing claimants of denial of benefits include: (1) the specific reason or reasons for the denial; (2) the reference to the plan provisions on which the denial is based; (3) a description of information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; and (4) information regarding steps to be taken if the participant or beneficiary wishes to submit his claim for review. 29 C.F.R. § 2560.503–1(f).

11. Additionally, the Sixth Circuit noted that even if plaintiff would have received the notice from the defendant, that it did not comply with the procedural protection afforded by 29 U.S.C. § 1133. For example, the notice failed to provide the specific reason for the denial, did not contain explicit information as to the steps to be taken if the employee wished to submit his claim for review, and did not indicate what additional proof might be required for thorough consideration of plaintiff's claim. *Id.* at 616.

12. In allowing plaintiff to supplement the administrative record, the Sixth Circuit stated:

> Because defendant Provident failed to give appropriate notice, it is not entitled to the protection concerning administrative review which form the basis of *Perry.*

*Id.* at 617. Thus, because Provident's failure to follow ERISA's statutory notice requirement deprived plaintiff of an opportunity to present additional evidence to Provident in an administrative appeal, plaintiff was allowed to submit additional evidence for the district court to consider in its *de novo* review.

13. Defendant's April 1, 1993, letter stated only that the treatment would not be "medically necessary" and covered under the policy. Furthermore, the letter stated that such charges are considered "investigational and experimental." Admin.R. at 00011.

defendant's alleged violations of 29 U.S.C. § 1133 precluded him from fully pursuing his appeal, there is no basis in this case for a *de novo* hearing in which plaintiff would be allowed to introduce additional evidence. Thus, based on the foregoing reasons, plaintiff's Motion for Partial Summary Judgment is hereby DENIED.

*Defendant's Motion for Summary Judgment*

██ In considering defendant's Motion for Summary Judgment, this Court first must determine the appropriate standard for reviewing the denial of benefits in this case. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 the Court held:

> [A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

Thus, according to *Bruch*, the highly deferential arbitrary and capricious standard of review is appropriate only when the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits. Defendant asserts that such a grant of discretion is found in the following provisions of the plan at issue:

> No coverage will be provided for services or supplies: *considered by Central Benefits* to be Experimental/Investigative ...

Central Benefits National Health Insurance Plan, Admin.R. at 01161 (emphasis added). The plan further defines experimental/investigative as:

> any treatment, procedure, facility, equipment, drug, device or supply which *Central Benefits does not recognize* as accepted medical practice ...

*Id.* at Admin.R. 01171 (emphasis added).

In *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir.1991), the Sixth Circuit considered plan language similar to the plan language in the present case and found that such language confers discretion on the administrator and subjects benefit determinations to an arbitrary and capricious standard of review. In *Miller*, the plan permitted the insurance company to decide whether an applicant was "disabled" using medical evidence satisfactory to the company. The *Miller* court found that the language "satisfactory to" was a grant of discretionary authority described by the Supreme Court in *Bruch* and that the district court correctly applied an "arbitrary and capricious" standard of review.

██ Similarly, this Court finds that grant of discretion in the plan at issue, which allows defendant to determine whether certain treatments, procedures, etc. are experimental or investigative, clearly gives defendant the authority to determine eligibility for benefits. Thus, this court will apply an "arbitrary and capricious" standard when reviewing defendant's denial of benefits in this case and will only consider the evidence before the plan administrator at the time the benefit decision was made.

Defendant's Motion for Summary Judgment asserts that there is no dispute as to any material fact and that the Administrative Record establishes that defendant's decision to deny coverage to plaintiff under the plan at issue was not arbitrary or capricious. Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *id.* at 323, 106 S.Ct. at 2552, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

Pursuant to Rule 56(e), when confronted with a properly supported motion for sum-

mary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12. Thus, in considering defendant's Motion for Summary Judgment, this Court must determine if there is any genuine issue of material fact regarding whether defendant's decision to deny benefits was arbitrary or capricious. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991) (citing *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990)).

■■■ The Sixth Circuit has stated that an ERISA benefit plan administrator's determinations on eligibility for benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir.1991) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988)). However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" *Id.* (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). In the present case, the plan unambiguously excludes charges for experimental/investigative services. Additionally, the plan gives defendant discretion to determine whether a particular service is experimental/investigative. While the parties dispute whether HDCT with AMBT is experimental/investigative and excluded under the plan, the Court finds that defendant's denial of benefits was reasonable in light of the plan's language. A careful review of the Administrative Record in this case reveals sufficient evidence on which defendant could reasonably determine that HDCT–ABMT was experimental/investigative and not covered under the plan.

Portions of the Record supporting defendant's denial of benefits include Dr. Briggs' two recommendations, Dr. Mauer's initial report and later reports, two reports by the peer review panel, and several articles from the medical literature of oncology. Additionally, defendant relied on the protocol for Dr. Barlogie's study and the accompanying informed consent given by plaintiff. The protocol for Dr. Barlogie's study referred to the HDCT–ABMT treatment as "a pilot trial for a future intensive chemotherapy strategy...." Admin.R. 000183. Additionally, the protocol and the informed consent statement explained the experimental/investigational nature of both the intensive chemotherapy treatment and the high dose application of the drug Melphalan as a part of the treatment. *See* Admin.R. 000110–000115.

Similar to the present case, the court in *Schnitker v. Blue Cross/Blue Shield of Nebraska*, 787 F.Supp. 903 (D.Neb.1991), considered whether high dose chemotherapy with autologous stem cell rescue as a treatment for multiple myeloma was "investigative" and excluded under the terms of an ERISA plan. The plaintiff in *Schnitker* sought coverage from the plan to participate in a study similar to the study in the present case. Based on the protocol and informed consent statement describing the study as a "research study" and the treatment as investigational,[14] the court found that the denial of benefits was not arbitrary or capricious and was made after a detailed factual background investigation of the claim and the proposed treatment. *Id.* at 906.[15] Likewise, in the

---

**14.** The protocol in *Schnitker* included similar language found in Dr. Barlogie's protocol such as references to the "investigational nature" of the study, the research aspects of the procedure, and the use of "new drugs" with dosages exceed-

ing dosages approved by the FDA. *Schnitker*, 787 F.Supp. at 905.

**15.** The court also considered the defendant insurance company's conflict of interest and deter-

present case, not withstanding defendant's conflict of interest, this Court finds that the denial of benefits in this case was not arbitrary or capricious and was based on thorough consideration of all the evidence in the Administrative Record.[16]

Additionally, letters from other physicians submitted to the administrator by plaintiff do not support plaintiff's position that defendant's denial of benefits was arbitrary and capricious in this case. For example, one letter submitted by plaintiff reads:

> Once a patient fails initial chemotherapy, autologous transplantation may offer them a better chance for a second prolonged remission than any other treatment modality. Although it is clear this has not been established by clinical trials ...

Dr. Vogler letter, Admin.R. at 00966. Another letter states:

> At the present time we would consider high dose chemotherapy with bone marrow transplantation (either allogenic or autologous) as state-of-the-art treatment for selected patients with multiple myeloma. We have active treatment protocols along these lines ... although the percentage of cure is still uncertain, this is by far their best chance of long term remission.

Dr. Jansen letter, Admin.R. at 00968. Even viewing the evidence in a light most favorable to plaintiff, plaintiff has not shown that there is a genuine issue of material fact disputed regarding whether defendant's denial of benefits in this case was arbitrary or capricious. Thus, this Court finds that the denial of benefits in this case was rational in light of the plan's provisions. Therefore, defendant's Motion for Summary Judgment is hereby GRANTED.

SO ORDERED.

---

mined that notwithstanding the conflict of interest that defendant's denial of benefits was rational after consideration of relevant facts. *Schnitker,* 787 F.Supp. at 906.

16. It is apparent after reviewing the Administrative Record in this case that experts in the field of oncology disagree as to whether HDCT–ABMT is "experimental/investigative"—especially in cases dealing with multiple myeloma. Thus, in light of the differences of opinion and conflicting studies regarding the experimental/investigative nature of HDCT–ABMT in the treatment of multiple myeloma, it was not arbitrary or capricious for defendant to deny benefits in this case.