LAWRENCE v. TRAVELERS' INS. CO. et al.

No. 17744.

District Court, E. D. Pennsylvania.

March 16, 1934.

Edward A. Collins, Jr., and Hepburn & Norris, all of Philadelphia, Pa., for plaintiff.

Charles B. Ermentrout, of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is an interpleader, under which the life insurance company has paid the face value of the policy into court, and the only question is whether the fund shall be paid to the assignee of the policy or to the administrator of the insured.

The parties waived jury trial, and on the hearing the only evidence offered was a stipulation in which all material facts were agreed upon. This stipulation is adopted by the court as findings of fact and may be taken as a special verdict.

Summarized, the facts are that on August 13, 1925, one Walter Scholes took out a policy of life insurance upon his own life in the amount of $10,000, payable to his executors, administrators or assigns. Six days later he assigned the policy by an absolute assignment to Geraldine Lawrence, which assignment was delivered to her on August 27th. Miss Lawrence had not, and has never had, any insurable interest in the life of the insured, and for that reason the company would not have allowed the insured to designate her as beneficiary in the policy. The assignment was without consideration. Thereafter all notices of premium were sent to the insured until the date of his death, and he paid all the premiums until February 13, 1933, when, being unable to pay the premium then due, he instructed the plaintiff to pay it, promising to reimburse her. For this purpose the plaintiff borrowed upon the policy, and with money so borrowed paid the premium due as well as the next two premiums. Scholes died September 12, 1933, while the policy was in full force.

Whether an assignee who has no insurable interest may recover upon a policy of life insurance is a question which has been before the courts of the country on many occasions, and the decisions are in conflict. The cases are collected and digested in a very complete case note to be found in 73 A. L. R. at page 1036, and the earlier cases may be found listed in the opinion in Gordon v. Ware National Bank (C. C. A.) 132 F. 444, 67 L. R. A. 550. It would serve no purpose to review them here.

Even if it be assumed that, as the defendant argues, Pennsylvania is one of the jurisdictions in which the assignee under the facts of this case may not recover, this court would not be bound by those rulings. The question is clearly one of general law not involving local statutes or usages or settled rules of property, and therefore one upon which the federal courts must exercise independent judgment. Russell v. Grigsby (C. C. A.) 168 F. 577, 580 (unaffected upon this point by the reversal); Gordon v. Ware National Bank, supra. In the absence of controlling federal decisions, we should of course, if possible, follow the Pennsylvania rule, unless it appeared to be clearly wrong. But the Supreme Court of the United States and the Circuit Court of Appeals for this circuit have taken a different view, and of course we are bound by their decisions.

In Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 59, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863, the court, overruling at least the dicta of Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, and other earlier cases, held the general rule to be that the fact that an assignee has no insurable interest does not, upon any ground of public policy or otherwise, prevent recovery by him. The court allowed what is, in all jurisdictions which have adopted the same rule, held to be an exception—that, where the whole transaction from the beginning is entered into as a mere cover for a wager or gambling transaction, the assignment is void. As Mr. Justice Holmes puts it: " * * * Cases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, have no similarity to those where an honest contract is sold in good faith."

It is true that facts before the court in Grigsby v. Russell showed affirmatively that the policy was originally taken by the insured without any immediate idea of assignment, for it appeared that, after he had paid two premiums and a third was overdue, being in want and needing money for a surgical operation, he asked the assignee to buy the policy, and sold it to him for $100. However, the opinion is based upon much broader grounds, and the discussion of the public policy involved shows beyond question that the court intended to lay down a general rule in favor of such assignments, and was not merely dealing with an exception, based upon the facts of that case, to a general rule the other way. The importance of having a correct view of Grigsby v. Russell upon this point appears in the present case, because here there is no evidence one way or the other as to the motivating cause for tak-

ing out and assigning this policy and none as to the circumstances surrounding the transaction. If I have correctly understood Grigsby v. Russell as laying down the general rule, then we must take the position that the transaction is to be sustained unless the defendant shows that it was "in its inception, a wager."

The assignment was in point of time very close to the issuance of the policy, and it may well have been (although there is no evidence on the point) that, when the insured took out the policy, he intended to assign it to the plaintiff. This, however, would not be sufficient. If it is to be shown that he, in the words of Mr. Justice Holmes, lent himself to one without an insurable interest as a cloak to a gambling transaction, it must appear that the assignee participated in some way. But she did not buy the policy or give any consideration for its assignment to her. So far as it appears, she did not even know that it had been taken out until the assignment was delivered to her nearly a month after it had been applied for. She paid no premiums and invested nothing in the contract until financial difficulties nearly eight years later compelled the insured to appeal to her, and even then she merely acted as a medium through which he was enabled to borrow upon the policy. These admitted facts do much more than overcome any suspicion of collusion to evade the law which might arise from the proximity in time of the issuance of the policy and the assignment.

Another point made by the defendant is based upon the agreed fact that the company would not have written the policy with the plaintiff as the beneficiary because of her lack of insurable interest. Consequently, the defendant argues, the insured must have adopted the course he did in order to circumvent this rule or policy of the company. Even so, he was not violating any rule of law or public policy, because it is everywhere conceded that a man has an insurable interest in his own life and may legally name whomever he pleases as beneficiary. Haberfeld v. Mayer, 256 Pa. 151, 100 A. 587; Steen v. Lowry, 85 Pa. Super. Ct. 365. So far as the company is concerned, by paying the money into court, it has waived any objection arising from infraction of its rules or of the terms of the policy.

From what has been said it follows that the plaintiff is entitled to recover.

Judgment may be entered for the plaintiff upon the special verdict in the amount claimed with interest.