Raymond COCHRAN,[1] as conservator
of Regina Elizabeth Hunter,
Plaintiff,

v.

TRANS–GENERAL LIFE IN-
SURANCE COMPANY,
Defendant.

Civil No. 98–40191.

United States District Court,
E.D. Michigan,
Southern Division.

July 30, 1999.

1. The complaint as originally filed listed the conservator as "Willie Mae Hunter." However, in a stipulated order entered January 22, 1999, this Court allowed the case caption to be amended to reflect Regina Elizabeth Hunter's new conservator, "Raymond Cochran."

Charles W. Palmer, Robb, Messing, Taylor, MI, for plaintiffs.

Andrea L. Szymanski, Dykema, Gossett, Detroit, MI, John A. Ferroli, William J. Brennan, Dykema Gossett, Grand Rapids, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Presently before the Court is a motion for summary judgment filed May 28, 1999 by defendant Trans–General Life Insurance Company (hereinafter "Trans–General"). The above-entitled action concerns a claim brought by plaintiff Willie Mae Hunter, as conservator of Regina Elizabeth Hunter, for long-term disability benefits under a disability policy issued by Ms. Hunter's former employer, Detroit East, Inc. There is no dispute that the policy at issue is a "qualified plan" pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. On June 21, 1999, plaintiff responded to defendant's motion. Defendant submitted a reply brief on July 1, 1999.

For the reasons set forth below, the Court will grant defendant Trans–General's motion for summary judgment, construed as a motion for entry of judgment seeking affirmance of the plan administrator's decision to deny plaintiff's claim for long-term disability benefits.[2]

## I. FACTUAL BACKGROUND

In July 1989, plaintiff Regina Elizabeth Hunter was hired by the Detroit East Community Mental Health Center as the director of consultation, education, and prevention. In this capacity, plaintiff became the beneficiary of a long-term disability policy (hereinafter "the Plan") purchased by her employer from Group America Insurance Company (now known as Trans–General Life Insurance Company), defendant herein. See Plan attached as Exh. B(1) to defendant's brief in support of motion for summary judgment.

The Plan contains the following language regarding scope of coverage:

**2.** Defendant's motion for summary judgment will be decided on the briefs submitted by the respective parties and without the necessity for oral argument pursuant to L.R. 7.1(e)(2) (E.D.Mich.1998).

[u]ntil LTD DISABILITY BENEFITS have been paid for *24 months,* you are only required to be DISABLED from you own occupation. You are DISABLED from you own occupation if, as a result of SICKNESS, ACCIDENTAL BODILY INJURY or PREGNANCY, you are EITHER:

    b. Unable to perform with reasonable continuity the material duties of your own occupation; OR

    c. Unable to earn more than 80% of your INDEXED PREDISABILITY EARNINGS while working in your own occupation.

*See id.,* pp. 4–5 (emphasis added). After expiration of 24 months, however, the Plan explicitly provides that benefits will be paid out only upon disability from "all occupations." As the Plan provides,

[a]fter LTD BENEFITS have been paid for *24 months,* you must be DISABLED from *all occupations.*

You are DISABLED from you all occupations if, as a result of SICKNESS, ACCIDENTAL BODILY INJURY or PREGNANCY, you are EITHER:

    a. Unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training, and experiences or

    b. Unable to earn more than 80% of your INDEXED PREDISABILITY EARNINGS while working in your own or any other occupation.

*Id.* p. 5 (emphasis added). The Plan also contains a separate provision relating to payment of long-term disability benefits in cases involving a disability caused or contributed to by a mental disorder:

MENTAL DISORDER: Payment of LTD BENEFITS is *limited* to *24 months* for reach period of disability caused or contributed to by a MENTAL DISORDER ... MENTAL DISORDER means a mental, emotional, or behavioral disorder.

*Id.,* p. 7 (emphasis added).

On May 6, 1990, plaintiff was involved in a chain reaction auto accident. As a result of the accident, plaintiff complained of dizziness, neck and back pain. Plaintiff was initially treated at Heritage Hospital, where she was diagnosed with a shoulder strain and released. Upon attempting to return to work a few days thereafter, plaintiff reported experiencing ringing in her ears, dizziness, and a bloody drainage out of her left eye.

On May 11, 1990, plaintiff saw her family physician, Dr. John Loomis, who referred her to the Genesis Group for neuropsychological testing. On May 31, 1990, Dr. Richard Weiss of the Genesis Group performed a neuropsychological evaluation of plaintiff. *See* Exh. B to plaintiff's brief in response to defendant's motion. Dr. Weiss' evaluation revealed that plaintiff's "current performance levels fall significantly below performance levels attained prior to her accident." *Id.,* p. 11. Dr. Weiss diagnosed plaintiff as suffering from post-concussion syndrome, an adjustment reaction with emotional features. Plaintiff was subsequently referred to a board certified physical medicine rehabilitation specialist, Dr. Mary Ann Guyon of Wyandotte Hospital.

On September 5, 1990, Dr. Guyon evaluated plaintiff, finding a closed head injury secondary to cerebral concussion, post-concussion syndrome, cognitive deficits, post-traumatic stress, sleep disorder, and myofascial strain of her neck and low back. *See* Exh. C to plaintiff's brief in response to defendant's motion. An MRI showed a right parasellar mass in plaintiff's brain, as well as a herniated disc. Dr. Guyon indicated that plaintiff was disabled from working at her regular job.

In February 1991, plaintiff began treatment at the Haggerty Center in their full day patient program for cognitive rehabilitation. *See* Exh. C to plaintiff's brief in response to defendant's motion. As part of her rehabilitation, plaintiff began volunteering at Green Glacier Community Center, in Ann Arbor, Michigan. A report from her occupational therapist in August 1991 indicated that plaintiff was having

difficulty in working at the community agency, including difficulty in organizational issues, fatigue, and inability to follow-up. *See* Exh. D to plaintiff's brief in response to defendant's motion.

In June 1991, plaintiff was discharged from the Haggerty Center. The discharge report, dated June 9, 1991, concluded that plaintiff's "need for supervision is no longer needed." *See* Discharge Summary, p. 9, attached as Exh. D. to plaintiff's brief in response to defendant's motion. The discharge report also contained the following assessment:

> Ms. Hunter is presently functioning at a level close to her status prior to her injury. The major difference is that she is not yet competitively employed. However she anticipates return to work soon. She is investigating options and is hopeful of doing consulting. Ms. Hunter continues to fatigue more easily, but is aware of when to refrain from pushing herself too far. Thus far, she has been monitoring herself effectively.

*Id.*

In February 1992, plaintiff was approved for social security disability benefits for the period May 6, 1990 through September 1, 1991. *See* Exh. E to plaintiff's brief in response to defendant's motion. However, plaintiff had been receiving long-term disability payments from defendant insurance company since May 1990, and the award of social security benefits created an overpayment. As a consequence, defendant withheld plaintiff's long-term disability payments until $7,000 was repaid to defendant. After negotiation, defendant agreed to reduce the overpayment amount to $3,500. *See id.*

In early 1992, plaintiff was sent by defendant-company to a neurologist, Dr. Francis P. Judge, for an independent medical examination. In a letter dated June 3, 1992, defendant sent Dr. Judge a list of questions concerning plaintiff. *See* Exh. E to plaintiff's brief in response to defendant's motion. The questions related to the doctor's diagnosis, prognosis, objective findings, as well as proposed limitations or restrictions on plaintiff's activities. *See id.* On July 13, 1992, Dr. Judge evaluated plaintiff and issued a report, concluding that plaintiff was *not* disabled and had *no limitations whatsoever. See* Exh. F. to plaintiff's brief in response.

In a letter dated October 29, 1992, defendant informed plaintiff that because she was not disabled from "all occupations," plaintiff was not entitled to continued coverage under the Plan. Defendant subsequently denied plaintiff's long-term disability claim. It is undisputed that defendant had paid long-term disability benefits to plaintiff for the two prior years, i.e., from November 7, 1990 until November 7, 1992. Plaintiff requested review of defendant's denial of her claim. Defendant reviewed plaintiff's file two more times, and sent two follow-up letters upholding its denial of plaintiff's long-term disability claim. *See* Exhs. B(5), B(6), and B(8) to defendant's brief in support of motion for summary judgment.[3]

On May 4, 1998, plaintiff Willie Mae Hunter, as conservator of Regina Elizabeth Hunter, filed the instant action in Wayne County Circuit Court, State of Michigan (Case No. 98–813743–CZ).[4] Plaintiff alleged a state law claim of breach of contract, as well denial of long-term disability benefits in violation of ERISA,

---

3. One requirement in an action brought pursuant to ERISA for review of denial of benefits is that plaintiff must exhaust all administrative remedies prior to initiating the action in federal court. *See* 29 U.S.C. § 1133(2); *see also Miller v. Met. Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451 (6th Cir.1991). As indicated above, plaintiff has met this preliminary threshold in the case at bar.

4. As mentioned above, although plaintiff brought the instant action in the name of "Willie Mae Hunter, as conservator of Regina Elizabeth Hunter," the Court issued a stipulated order on January 22, 1999, allowing an amended case caption. That order changes the caption to read, "Raymond Cochran, as conservator of Regina Elizabeth Hunter."

29 U.S.C. § 1132(a)(1)(B). On June 3, 1998, defendant filed its notice of removal, invoking federal jurisdiction premised on both diversity of citizenship pursuant to 28 U.S.C. § 1332 and the existence of a federal question pursuant to 28 U.S.C. § 1331. Plaintiff has not contested removal.

## II. SUMMARY JUDGMENT IS NOT AVAILABLE IN ERISA DENIAL OF BENEFITS ACTIONS.

■ At the outset, the Court notes that the U.S. Court of Appeals for the Sixth Circuit in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir.1998), has held that summary judgment procedures are "inapposite to the adjudication of ERISA actions" to recover benefits. *See id.* at 619; *see also Eriksen v. Met. Life Ins. Co.*, 39 F.Supp.2d 864 (E.D.Mich.1999) (Rosen, J.). In *Wilkins*, the court held that "[b]ecause this court's precedents preclude an ERISA action from being heard by the district court as a regular bench trial, it makes little sense to deal with such an action by engaging a procedure designed solely to determine 'whether there is a genuine issue for trial.' " [5] *Wilkins*, 150 F.3d at 619; *see also Eriksen*, 39 F.Supp.2d 864, 865. In keeping with *Wilkins* and Judge Rosen's recent opinion in *Eriksen*, this Court will evaluate the instant motion not as a motion for summary judgment but rather as motion for entry of judgment seeking affirmance of the plan administrator's decision to deny plaintiff's claim for long-term disability benefits.

5. The Sixth Circuit in *Wilkins* provided the following "suggested guidelines" for district courts to follow in adjudicating an ERISA action:

1. As to the merits of the action, the district court should conduct a de novo review [unless the "arbitrary or capricious" standard is applicable] based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

## III. STANDARD OF REVIEW

■ The United States Supreme Court has held that a denial of benefits challenged under ERISA is to be reviewed under a *de novo* standard of review, *unless* the plan in question gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). "In reviewing a plan administrator's benefits decision, a threshold question is whether the plan gives the decisionmaker discretionary authority to rule on benefit claims." *Equitable Life Assurance Society of the United States v. Crysler*, 66 F.3d 944, 949 (8th Cir.1995). "If it does, then the plan administrator or insurer must make the initial decision, which the court then reviews under a deferential standard of review." *Id.* (citing *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 & n. 2 (8th Cir.1993)). This deferential standard has been described as an inquiry into whether the plan administrator's decision was "arbitrary and capricious," or " 'rational in light of the plan's provisions.' " *Perry v. United Food & Comm'l Workers District*, 64 F.3d 238, 242 (6th Cir.1995) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991)).

■ It is apparent in the present case that the Plan does give discretionary authority to the plan administrator to determine eligibility for benefits. The Plan ex-

2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

3. For the reasons set forth above, the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

*Id.* at 619.

pressly requires that "satisfactory written proof" of disability be received before benefits are payable. *See* Exh. B(1) to defendant's brief in support of motion for summary judgment. As the Plan provides, "we will pay the LTD BENEFIT described in Part 8 upon satisfactory written proof that you have become DISABLED while insured under the GROUP POLICY." *Id.*, p. 6. In another section relating to claims provisions and procedures, the Plan further provides that "[n]o LTD BENEFITS will be paid until we receive satisfactory written proof...." *Id.*, p. 18.

The Sixth Circuit has held that when an ERISA-qualified plan requires plan members to provide proof of disability in order for the plan member to be entitled to benefits, the plan is "authorized to exercise discretion" in awarding benefits. *Miller v. Met. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991). Courts have considered the following provisions sufficient to grant discretion: "on the basis of medical evidence satisfactory to the corporation," *Roberson v. Gen. Motors Corp.*, 801 F.2d 176, 178 (6th Cir.1986), "on the basis of medical evidence satisfactory to the insurance company," *Miller*, 925 F.2d at 983, and "on the basis of medical evidence satisfactory to the Committee." *Hanser v. Ralston Purina Co.*, 821 F.Supp. 473, 477 (E.D.Mich. 1993). As the Sixth Circuit stated on another occasion, the "critical requirement" is that "the evidence of disability be satisfactory." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

Despite the discretion afforded to the plan administrator in determining eligibility of benefits, plaintiff maintains that certain "limitations" should be recognized in applying the arbitrary and capricious standard in cases where a conflict of interest exists. Plaintiff cites case law from various circuits holding that in applying the arbitrary and capricious standard, "a court must weigh as a relevant factor whether an insurer operates under an inherent conflict of interest, by both administering a plan and paying benefits out of its own funds." *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996); *see also Sweatman v. Comm'l Union Ins. Co.*, 39 F.3d 594 (5th Cir.1994) (applying an abuse of discretion standard); *Florence Nightingale Nursing Svc. Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476 (11th Cir.1995), *cert. denied*, 514 U.S. 1128, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995) (holding that claims administrator not entitled to deferential standard of review, but had burden to prove that its decision was not tainted by self-interest); *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149 (4th Cir.1996) (finding that company which both funded and administered ERISA plan did not evaluate participant's claims in manner consistent with duty of loyalty); *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993) (applying abuse of discretion standard).

■ It is a well-settled rule that a district court is bound by the decisions of the circuit court of appeals in which it sits. *Lawrence v. Travelers' Ins. Co.*, 6 F.Supp. 428, 429 (E.D.Pa.1934). This Court therefore must look to the applicable Sixth Circuit rules in applying the arbitrary and capricious standard in light of an asserted conflict of interest. In *Miller v. Auto-Alliance Int'l Inc.*, 953 F.Supp. 172 (E.D.Mich.1997) (Gadola, J.), this Court examined a similar argument brought by a plaintiff who claimed that a *de novo* standard should be applied due to an alleged conflict of interest. In rejecting this position, this Court in *Miller* looked to Sixth Circuit precedent which recognized that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" *Id.* at 176 (quoting *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989) and *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57).

In light of the above, this Court finds that the arbitrary and capricious standard is the proper standard of review to be

applied in the instant case. The existence of a conflict of interest, assuming such a conflict is found, will be weighed as *one factor* in determining whether defendant Trans–General's decision to deny plaintiff's long-term disability benefits was arbitrary and capricious. " 'The arbitrary and capricious standard is the least demanding form of judicial review of administrative action' and … '[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.' " *Davis*, 887 F.2d at 693.

## IV. ANALYSIS

### A. Plaintiff's state law claim of breach of contract is preempted by ERISA.

■ As a preliminary matter, the Court notes that plaintiff's state law breach of contract claim is subject to preemption pursuant to ERISA, 29 U.S.C. § 1144(a). In the complaint, plaintiff alleges that "[d]efendant's cut off of long term disability benefits is a breach of the disability insurance contract between Defendant and Plaintiff's former employer, Detroit East, Inc." Complaint ¶ 11. The parties are in agreement that this state law claim for breach of contract is preempted under the comprehensive statutory scheme contained within ERISA. *See* 29 U.S.C. §§ 1002–1003. It is well-established that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).

### B. The plan administrator's decision to terminate plaintiff's long-term disability (LTD) benefit payments was not arbitrary and capricious under the circumstances of the instant case.

■ In reviewing the decision of the plan administrator, a court will look only to the evidence that was before the administrator at the time the final decision was made. *Holsey, M.D. v. UNUM Life Ins. Co.*, 944 F.Supp. 573, 576–577 (E.D.Mich.

1996) (Gadola, J.); *see also Perry v. Simplicity Eng'g*, 900 F.2d 963 (6th Cir.1990). Plaintiff urges this Court to look beyond the closed record at evidence relating to plaintiff's lack of judgment and inability to manage her own affairs, as well as to other evidence of cognitive impairment. While plaintiff concedes that restricting review to the closed record is the correct general rule, plaintiff contends that "this case presents very unique facts which call for an application of an exception to the general rule." Plaintiff's brief in response, p. 14. However, plaintiff proffers no case law or other authority in support of her position that this Court may look beyond the evidence which was before the plan administrator. As a consequence, this Court finds that it is bound to consider only the evidence that was before the administrator at the time the final decision was made.

Defendant argues that under the arbitrary and capricious standard of review, "an administrator's decision will be overturned only upon a showing of internal inconsistency, bad faith, or some other ground for calling such determinations into question." *Maxwell v. Twp. of Clinton*, 1994 U.S.Dist. LEXIS 7862, *10 (E.D.Mich.1994) (Gadola, J.) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 695 (6th Cir.1989)). "If the administrator's evaluation or interpretation has a rational basis, a court reviewing the determination under the arbitrary and capricious standard should not disturb that determination." *Id.* (citing *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 982 (6th Cir.1991)). Defendant also cites this Court's recent decision in *Rakoczy v. Traveler's Ins. Co.*, 959 F.Supp. 777 (E.D.Mich.1997) (Gadola, J.), discussing the arbitrary and capricious standard as applied in ERISA cases:

[u]nder this highly deferential standard of review, the outcome of the plan administrator will be upheld if "it is possible to offer a reasoned explanation, based on the evidence, for [that] particu-

lar outcome. . . ." *Davis,* 887 F.2d at 693 (quoting *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)). The court may not substitute its judgment for the defendant's judgment, but rather "must determine whether in light of the relevant facts, [defendant] articulated a rational connection between the facts found and the choice made." *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 936 (7th Cir.1989) (citation omitted). Indeed, a decision by the defendant will be upheld so long as the decision does not run contrary to Congressional intent, or entirely fail to consider an important aspect of the problem, or is not in accord with the plain meaning of the Policy or is so implausible that it could not be ascribed to a difference in view. *Id.* In applying this standard, the court only considers the evidence that was before the decision-maker when it made its final decision. *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir.1990); *Crews v. Central States,* 788 F.2d 332, 336 (6th Cir.1986). The court does not conduct a de novo evidentiary hearing. *Id.*

*Rakoczy,* 959 F.Supp. at 782 (footnotes omitted).

Defendant further maintains that the Plan clearly mandates a *change* in the definition of "disability" after long-term disability benefits have been paid out for a term of 24 months. As the Plan provides, "[u]ntil LTD DISABILITY BENEFITS have been paid for *24 months,* you are only required to be DISABLED from your own occupation . . . . [a]fter LTD DISABILITY BENEFITS have been paid for *24 months,* you must be DISABLED from all occupations." *See* Exh. B(1) to defendant's brief in support, pp. 4–5 (emphasis added). Plaintiff was notified of the change in the definition of disability in a letter dated January 2, 1992. *See* Exh. B(2) to defendant's brief in support. In that letter, defendant stated that in making its decision, it would consider "your medical condition and the restrictions it may place upon your ability to work with reasonable continuity; the skills and knowledge you gained from your education

and past experience; your prior occupation(s); and whether you can perform jobs compatible with your activity capabilities." *Id.,* p. 2.

In making its decision to terminate long-term disability benefits, defendant contends that it reviewed, among other documents, the January 24, 1992 Attending Physician's form prepared by plaintiff's family doctor, Dr. John L. Loomis. In that form, Dr. Loomis indicated that plaintiff was not totally disabled from doing her job or any other work. *See* Exh. B(3) to defendant's brief in support. In addition, defendant maintains that it reviewed the July 16, 1992 report from Dr. Frank P. Judge. In that report, Dr. Judge stated that "my diagnosis is that this patient has no evidence of any neurological disease and no evidence of any closed head injury." *See* Exh. A(11) to defendant's brief in support, p. 2. The doctor added that he would "not place any limitations [or] restrictions on this patient." *Id.*

After plaintiff wrote a letter to defendant dated December 10, 1992, requesting review of the decision to terminate benefits, defendant received information from another of plaintiff's treating physicians, Dr. Mary Ann Guyon. *See* Report of Dr. Guyon, attached as Exh. B(7) to defendant's brief in support. Defendant maintains that Dr. Guyon's report indicated significant improvement in plaintiff's condition. Upon reviewing the information contained in Dr. Guyon's report, the plan administrator sent plaintiff a final denial letter, stating that "information contained in [Dr. Guyon's report] indicates you are able with reasonable continuity to perform the material duties of any occupation for which you are reasonably fitted by education, training and experience." *See* Exh. B(8) to defendants' brief in support, p. 1.

In the alternative, defendant argues that plaintiff is barred from receiving further benefits because of the very nature of her disability. Plaintiff's complaint filed May 4, 1998 states unequivocally that plaintiff is claiming disability due to "insanity." *See*

Complaint ¶ 10. Defendant cites the limitations section of the policy in question, which states, in pertinent part, as follows:

"MENTAL DISORDER: Payment of LTD BENEFITS is *limited* to *24 months* for each period of disability caused or contributed to by a MENTAL DISORDER ... MENTAL DISORDER means a mental, emotional, or behavioral disorder."

*Id.*, p. 6 (emphasis added). According to defendant, since plaintiff received LTD benefits for the 24–month period from November 7, 1990 to November 7, 1992, this period exhausted plaintiff's entitlement to LTD benefits. *See* Exh. B(1) to defendant's brief in support, p. 7.

In response, plaintiff maintains that defendant relied only on Dr. Judge's July 16, 1992 report. According to plaintiff, the findings in Dr. Judge's report are not credible. First, plaintiff criticizes Dr. Judge for performing a "neurologic" evaluation, as opposed to a "neuropsychological" examination. *See* plaintiff's brief in response, p. 16. Because Dr. Judge only performed a "physical" examination, the results of which were normal, and failed to review plaintiff's MRI and EEG reports, plaintiff maintains that the doctor failed to uncover any of her cognitive and behavioral deficits. *Id.*, 16–17. Plaintiff attempts to support this assessment by citing Dr. Guyon's narrative report discussing an office visit with plaintiff on October 12, 1992. In the report, Dr. Guyon states that "physically [plaintiff] was doing fine ... [If Dr. Judge had] assessed cognitive and behavioral deficits, he would have found residuals of her closed head injury, which were far less as time goes by than previously." *Id.*, p. 17. Plaintiff utterly fails to address defendant's alternative argument regarding the limitation on the policy in question with respect to disability caused or contributed to by a mental disorder.

Due to the foregoing considerations, the Court finds after a thorough review of the administrative record that defendant Trans–General did not act arbitrarily and capriciously in denying plaintiff Hunter's request for continued long-term disability benefits. Plaintiff has not come forward with any evidence showing that the plan administrator made its decision to deny benefits in bad faith. See *Maxwell,* 1994 U.S.Dist. LEXIS 7862, *10 (Gadola, J.). Although plaintiff argues initially that an inherent conflict of interest exists because defendant both administers the Plan and pays benefits out of its own funds, plaintiff has offered no evidence to suggest that this alleged conflict played any part in defendant's decision-making process.

In addition, plaintiff's criticism that defendant based its decision *solely* on the opinion of Dr. Judge is not borne out by the record. Defendant has presented evidence of Attending Physician Loomis' statement dated February 4, 1992, providing that plaintiff is not totally disabled from doing her own job or any other work. *See* Exh. B(3) to defendant's brief in support. Moreover, defendant re-evaluated plaintiff's claim for benefits after the initial denial. At that point in time, defendant relied upon Dr. Guyon's report dated December 7, 1992. That report was very positive and indicated that plaintiff was exercising, applying for jobs, and continuing to do volunteering and grant writing. *See* Exh. B(7) to defendant's brief in support. Given these three sources—Dr. Loomis' statement, Dr. Judge's evaluation, and Dr. Guyon's report—defendant's determination that plaintiff was *not* disabled from *all* occupations cannot be said to have been arbitrary and capricious. Defendant has offered a reasoned explanation, based upon the evidence, for its decision to deny plaintiff's continued long-term disability benefits.

■ It is important to note that *even if* defendant had based its decision solely on Dr. Judge's evaluation, as plaintiff claims, plaintiff would still *not* be entitled to further long-term disability benefits. Defendant has advanced an alternative reason for the denial of benefits which plaintiff, in her responsive brief, fails to address. It is the Court's opinion that this alternative

reason, in and of itself, is sufficient to prevent plaintiff from receiving any further benefits.

As mentioned above, plaintiff states in her complaint that "[s]ince the motor vehicle accident in 1990, [p]laintiff has been under the disability of insanity as defined in [M.C.L. § ] 600.5851." Complaint ¶ 10.[6] Thus, by her own admission, plaintiff is claiming insanity. As a result, her condition clearly falls within the limitations section contained on page 7 of the Plan. *See* Exh. B(1) to defendant's brief in support, p. 7. As discussed, that provision states, in pertinent part, that

> [p]ayment of LTD BENEFITS is limited to 24 months for each period of disability caused or contributed to by a MENTAL DISORDER. However, if you are a resident patient in a HOSPITAL at the end of the 24 months, this limitation will not apply while you remain continuously confined.
>
> MENTAL DISORDER means a mental, emotional, or behavioral disorder.

*Id.* Plaintiff's claim of a "mental disorder" is further underscored by her reliance on M.C.L. § 600.5851 in her responsive brief. In that context, plaintiff argues that "[t]his Court should take notice of the Michigan statute regarding disabilities of infancy or insanity, M.C.L. § 600.5851(1) which tolls the statute of limitations for a person under a disability of infancy or insanity...." *See* plaintiff's brief in response, p. 15.

Since plaintiff is clearly claiming that her disability was caused or contributed to by a mental disorder, there can be no question that defendant's decision to deny further long-term disability benefits was "rational in light of the plan's provisions." *Miller*, 925 F.2d at 984. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis*, 887 F.2d at 693. More-

over, there is no indication that plaintiff falls within the exception to the mental disorder limitation, i.e., that plaintiff was "a resident patient in a HOSPITAL at the end of the 24 months...." Exh. B(1) to defendant's brief in support, p. 7.

For the reasons discussed hereinabove, the Court finds that defendant Trans–General's decision to deny plaintiff's continued long-term disability benefits was not arbitrary and capricious. The Court will therefore grant defendant's motion for summary judgment, construed as a motion for entry of judgment seeking affirmance of the plan administrator's decision to deny plaintiff's claim for long-term disability benefits.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant Trans–General's motion for summary judgment, construed as a motion for entry of judgment seeking affirmance of the plan administrator's decision to deny plaintiff's claim for long-term disability benefits is **GRANTED;**

**IT IS HEREBY ORDERED** that the hearing on defendant's motion for summary judgment previously scheduled for August 4, 1999 is **CANCELED.**

A judgment in accordance with this memorandum opinion and order shall be entered forthwith.

**SO ORDERED.**

---

**6.** Mich.Comp.Laws § 600.5851 provides, in relevant part, that

> [t]he term insane as employed in this chapter means a condition of mental derangement such as to prevent the sufferer from

comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane.

M.C.L. § 600.5851(2).